**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TFH Properties, LLC, et. al., | ) No. CV-09-8050-PCT-FJM |
| Plaintiffs, | ) **ORDER** |
| vs. | ) |
| MCM Development, LLC, et. al., | ) |
| Defendants. | ) |

This is an action for fraudulent transfer under Arizona law and for a judgment that defendants Melvin and Janette McQuarrie are the alter egos of defendant MCM Development, LLC ("MCM"), pursuant to Utah law. We have before us plaintiffs' motion for summary judgment (doc. 44), defendants MCM and Melvin McQuarrie's response (doc. 48), defendant Janette McQuarrie's motion to join defendants MCM and Melvin McQuarrie's response (doc. 50), and plaintiffs' reply (doc. 51).

This case arose from a dispute over a construction contract between plaintiff TFH Properties ("TFH") and defendant MCM. In 2006, MCM sued TFH in the Superior Court of Arizona in Coconino County. TFH counterclaimed for damages from construction defects and delay, and the parties submitted to binding arbitration. On December 14, 2007, an arbitrator awarded TFH $85,932.74, plus fees. On December 11, 2008, the Superior Court entered a judgment against MCM for $95,932.74, plus $35,000 in attorneys' fees and $5,000

in arbitration fees, with an annual interest rate of 10%. <u>MCM Dev., LLC v. TFH Props, LLC, et. al.</u>, CV 2006-0519 (December 11, 2008). That judgment remains unpaid.

Plaintiffs later discovered that on December 5, 2007, MCM had transferred Tract A, Block 280 in Page, Arizona (the "property") to MCM's only member, Melvin McQuarrie. The property is an 18.7 acre parcel of vacant land, and was MCM's only significant asset. On January 8, 2009, plaintiffs sued in the Superior Court of Arizona to void the transfer. On March 26, 2009, defendants removed the action to federal court. On May 26, 2009, MCM filed for Chapter 7 bankruptcy.

Plaintiffs' first count is for fraudulent transfer, pursuant to Arizona's Uniform Fraudulent Transfer Act ("UFTA"). A.R.S. §§ 44-1001–1010 (2010). Plaintiffs claim the transfer was fraudulent as to present and future creditors, in violation of A.R.S. § 44-1004(A), and that it was constructively fraudulent as to present creditors only, in violation of A.R.S. § 44-1005. Plaintiffs request that we order the transfer void, or that we grant a judgment against Melvin McQuarrie for the amount of the judgment obtained in the state court proceeding, plus attorneys' fees, a portion of arbitration fees, and interest, pursuant to A.R.S. §§ 44-1007 and 44-1008. They also seek an injunction against further disposition of the company's property. Plaintiffs' second claim is that MCM is the alter ego of the McQuarries. They request that we disregard MCM's structure under Utah law, and enter judgment against the McQuarries for the amount of the superior court judgment against MCM, plus statutory interest.

In light of our previous denial of defendant Janette McQuarrie's motion to dismiss for lack of personal jurisdiction (doc. 52), we now grant defendant Janette McQuarrie's unopposed motion to join defendants MCM and Melvin McQuarries' response (doc. 50). For the reasons set forth below, we grant in part and deny in part plaintiffs' motion for summary judgment.

We note at the outset that in their Statement of Facts in Opposition to Plaintiffs' Motion for Summary Judgment, defendants object to plaintiffs' Statement of Facts on the grounds that (1) the supporting exhibits are not authenticated, and therefore not admissible,

and (2) the supporting exhibits were not disclosed before the Rule 16 Scheduling Order deadline, and are therefore not admissible (doc. 49). Plaintiffs contest these evidentiary claims in their reply (doc. 51). Defendants have made this objection improperly by raising it in their Statement of Facts, rather than in their Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. Defendants may have attempted to circumvent the seventeen page limit for the Memorandum. See LRCiv 7.2(e). We do not consider any argument raised solely in the Statement of Facts.

## I

We first address plaintiffs' claim for constructive fraud**.** Under Arizona law, constructive fraud occurs when (1) a transfer (2) lacks reasonably equivalent value and (3) the debtor was insolvent at the time of the transfer, or the debtor became insolvent as a result of the transfer. A.R.S. § 44-1005; Hullett v. Cousin, 204 Ariz. 292, 295, 63 P.3d 1029, 1032 (2003). Constructive fraud does not require proof of intent, and no good faith defense is available. Id.

## A

The UFTA defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." A.R.S. § 44-1001(9). This definition encompasses the December 5, 2007 transfer of the property by warranty deed from MCM to Melvin McQuarrie. See State ex rel. Indus. Comm'n of Arizona v. Wright, 202 Ariz. 255, 257, 43 P.3d 203, 205 (Ct. App. 2002) ("This broad statutory definition clearly includes any transaction in which a property interest was relinquished."). It is immaterial that the tract in question belonged to Melvin McQuarrie before he transferred it to MCM in 2007. Id. at 258, 43 P.3d at 206.

## B

Second, plaintiffs must show that the transfer lacked reasonably equivalent value. A.R.S. § 44-1005. We conclude that plaintiffs have done so, despite defendants' contention that there remain genuine issues as to both the value of the property at the time of the transfer, and the value of the debt relief that MCM received in return. If in exchange for the

property, "property is given or an antecedent debt is secured or satisfied," there is value for the transfer. A.R.S. § 44-1003(A). Plaintiffs claim that at the time of transfer, the property was worth $654,000, the then tax value of the tract, and that in exchange for the property, MCM received forgiveness of $231,400 in debt to Melvin McQuarrie. Plaintiffs obtained the debt relief value from the Statement of Financial Affairs in MCM's bankruptcy filing, which Melvin McQuarrie signed. Plaintiffs note that the value of the debt relief was 65% less than the tax value of the property, and point to Arizona case law holding that forgiveness of an antecedent debt that is at least 56% less than the value of the property received is not fair consideration as a matter of law. Zellerbach Paper Co. v. Valley Nat'l Bank, 13 Ariz. App. 431, 436, 477 P.2d 550, 555 (1970).[1]

Defendants challenge plaintiffs' valuation of the property and of the debt forgiveness. They assert that the City of Page was selling land at $25,000 per acre, so the 18.7 acre parcel was actually worth $467,500. Defendants also argue that the value of the antecedent debt was $406,700.21, and the figure stated in the bankruptcy filing was an error based on incomplete information provided to MCM's attorney. Defendants Response to Plaintiffs' SOF ¶ 8. In his affidavit, McQuarrie lists additional debts and fees that he had paid on MCM's behalf. Moreover, defendants contend that the transfer involved the forgiveness of both the antecedent debt and the release of prospective debt, i.e. the mortgage on the property. They claim that when the $18,428.04 in prospective debt relief is also considered, MCM received 91% of the property value in the transfer.

There is no issue of fact as to the value of the debt relief because Melvin McQuarrie is judicially estopped from contradicting the figure he provided in MCM's bankruptcy filing. The purpose of the doctrine of judicial estoppel is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the

---

[1] Zellerbach applied a now repealed Arizona law on fraudulent conveyance, but the old statute's language is almost identical to the UFTA provisions on property value. See 13 Ariz. App. 431, 436, 477 P.2d 550, 555; A.R.S. § 44-1003 (repealed 1990) (fair consideration is given for property or obligation when in exchange for such property, as a fair equivalent therefor, property is conveyed or an antecedent debt is satisfied).

exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 1814 (2001). In deciding whether to apply the doctrine, we consider whether: (1) the party's later position was clearly inconsistent with its earlier position; (2) the party successfully persuaded the earlier court to accept the earlier position, so that acceptance of the inconsistent position would create the perception that one of the courts was misled; and (3) the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire, 532 U.S. at 750–51, 121 S.Ct. at 1815. Judicial estoppel does not apply if incompatible positions are based on inadvertence or mistake. Johnson v. State, Oregon Dep't of Human Res., 141 F.3d 1361, 1369 (9th Cir. 1998). In the bankruptcy context, courts have estopped parties from asserting causes of action not mentioned in the debtors' schedules or disclosure statements. See, e.g., Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001).

We hold that it is similarly appropriate to estop Melvin McQuarrie's from asserting a debt relief value different than that listed in MCM's Chapter 7 bankruptcy petition. First, the two values are clearly inconsistent. In the petition, Melvin McQuarrie stated that the value received for the property was $231,400.00, while in his affidavit he claims it was $425,128.25, a difference of $193,728.25. Second, the bankruptcy court accepted all assertions contained in the petition. Third, Melvin McQuarrie would impose an unfair detriment on plaintiffs if not estopped from contradicting his earlier valuation. Plaintiffs will face the burden of going to trial solely because Melvin McQuarrie created an issue of fact by claiming a different value than he previously declared correct under penalty of perjury. Finally, we conclude that no reasonable trier of fact could find that the inconsistent values were based on an earlier mistake, as Melvin McQuarrie now argues. While he may have provided his attorney incomplete information, he nonetheless signed the petition, thereby swearing that the information provided was true and correct to the best of his knowledge.[2]

---

[2] Plaintiffs contend that Melvin McQuarrie's assertion that the value received for the property was much higher than that listed in the bankruptcy filing is inadmissible under the sham affidavit rule, which prohibits a party from creating "an issue of fact by an affidavit

- 5 -

Thus, we accept as correct the value of debt relief stated in the bankruptcy petition, $231,400.00. Even if we accept defendants' value of the property, $467,500.00, rather than the $654,000 tax value asserted by plaintiffs, MCM received debt relief worth only 49% of the property value. Because this is unfair consideration, we conclude that the transfer lacked reasonably equivalent value as a matter of law. See Zellerbach Paper Co. v. Valley Nat'l Bank, 13 Ariz. App. at 436, 477 P.2d at 555.

## C

The third element of constructive fraudulent transfer requires that MCM was either insolvent when the transfer occurred, or that the transfer made MCM insolvent. A.R.S. § 44-1005. A debtor "is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." A.R.S. § 44-1002(A). Defendants admit that MCM was insolvent before and at the time of the transfer. See Response, 8. The evidence confirms this. According to MCM's bankruptcy filing, dated May 26, 2009, MCM had zero assets and debt totaling $365,694.40. MCM had owed one creditor $130,145.15 since 2006, reported income of $37,210 in 2007, and was not paying its debts as they came due.

Because the parties do not dispute the existence of a transfer and MCM's insolvency, and because defendants are estopped from contradicting the value of the exchange as listed in MCM's bankruptcy petition, we grant summary judgment on plaintiffs' constructive fraudulent conveyance claim against Melvin McQuarrie. Because plaintiffs have introduced no evidence suggesting that Janette McQuarrie was involved in the transfer of the property, we deny summary judgment on their fraudulent conveyance claim against her.

## II

Plaintiffs also allege actual fraudulent transfer, in violation of A.R.S. § 44-1004. A transfer is actually fraudulent if it was: (1) made with actual intent to defraud a creditor; or

---

contradicting his prior deposition testimony." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009). Because we hold that Melvin McQuarrie is judicially estopped from arguing a new value for the debt, we do not reach the sham affidavit argument.

(2) the debtor did not receive reasonably equivalent value for the transfer and the debtor was either (a) engaged or about to engage in business in relation to which his remaining assets were unreasonably small, or (b) was about to incur debt that was beyond his ability to pay. A.R.S. § 44-1004(A). We deny plaintiffs' motion on the actual fraud claim because there are genuine issues of material fact as to intent to defraud and there is no showing that MCM was about to engage in business that was disproportionate to its assets or that it was about to incur debt beyond its ability to pay.

Plaintiffs may show actual intent through either direct evidence or by circumstantial evidence from which actual intent may reasonably be inferred. <u>Wright</u>, 202 Ariz. 255, 260, 43 P.3d at 208. The UFTA provides a non-exclusive list of eleven factors, or "badges of fraud," that may be used to determine actual intent to defraud. A.R.S. § 44-1004(B). Even a single badge of fraud may establish that a transfer was fraudulent, and when several badges are present, "strong, clear evidence will be required to repel the conclusion of fraudulent intent." <u>Gerow v. Covill</u>, 192 Ariz. 9, 17, 960 P.2d 55, 63 (Ct. App. 1998).

Plaintiffs identify several badges of fraud in the MCM transfer: (1) the transfer was to an insider, A.R.S. § 44-1004(B)(1); (2) MCM had been sued prior to the transfer, A.R.S. § 44-1004(B)(4); (3) the transfer was for substantially all of MCM's assets, A.R.S. § 44-1004(B)(5); (4) the consideration MCM received was not reasonably equivalent to the property value, A.R.S. § 44-1004(B)(8); (5) MCM was insolvent or became insolvent shortly after the transfer, A.R.S. § 44-1004(B)(9); and (6) the transfer occurred shortly before or after a substantial debt was incurred, A.R.S. § 44-1004(B)(10).

Plaintiffs' evidence of these badges is compelling. However, "[c]ases where intent is a primary issue generally are inappropriate for summary judgment." <u>Provenz v. Miller</u>, 102 F.3d 1478, 1489 (9th Cir. 1996). Defendants deny that Melvin McQuarrie had actual intent. They argue that development of the property had been on hold while MCM engaged in unrelated litigation with the City of Page, and that by the time Melvin McQuarrie was ready to proceed, MCM Development had become a construction company that was no longer suited to develop the tract. Additionally, MCM had been the named party in the

litigation with the city, and Melvin McQuarrie thought it better that his name be on future development applications, rather than MCM's. Defendants further argue that at the time of the transfer, Melvin McQuarrie did not believe he would lose the arbitration (and therefore would owe money to plaintiffs).

MCM's assertions (although dubious) prevent plaintiffs from establishing intent as a matter of law. Additionally, plaintiffs have not argued that MCM was about to engage in business that was disproportionate to its assets or that it was about to incur debt beyond its ability to pay. We therefore deny plaintiffs' motion for summary judgment on their actual fraud claim.

### III

Plaintiffs also allege that MCM is the alter ego of the McQuarries. They request that we disregard MCM's structure, and hold Melvin and Janette McQuarrie jointly and severally liable for MCM's debts. We analyze plaintiffs' alter ego claims under Utah law, the law of the state of incorporation. See Restatement (Second) of Conflict of Laws § 307.

In considering plaintiffs' claim that the McQuarries are the alter egos of MCM, an LLC, we analogize to the test for piercing the veil of a corporation. To disregard the legal entity of a corporation under Utah law, two circumstances must be shown: (1) a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist, but the corporation is, instead, the alter-ego of one or a few individuals; and (2) if observed, the corporate form would sanction a fraud, promote injustice, or result in an inequity. Olson v. Olson, 226 P.3d 751, 754 (Utah App. 2010). Courts have referred to these two requirements respectively as the "formalities prong" and the "fairness prong." D'Elia v. Rice Development, 147 P.3d 515, 522–23 (Utah App. 2006). Utah courts "have been reluctant to lift the veil in contract cases, such as this one, where the creditor has willingly transacted business with the corporation." Id. at 522.

### A

Defendants argue that failure to observe formalities cannot be the basis for piercing the organizational veil of an LLC. They cite the Utah Revised Limited Liability Company

- 8 -

Act, Utah Code Ann. § 48-2c-605 (2010) (the "Revised Act"), which was enacted in 2001 and provides that the failure of a company to maintain records, hold meetings, or to observe any formalities and requirements imposed by the Revised Act is not grounds for imposing personal liability on any member of an LLC.  Utah Code Ann. § 48-2c-605 (2010).

No Utah state court or federal court has explicitly decided whether the veil of an LLC can be pierced under the Revised Act.  In the absence of controlling state authority, we must predict as best we can what the Utah Supreme Court would do in these circumstances. Pacheco v. U.S., 220 F.3d 1126, 1131 (9th Cir. 2000).[3]  Prior to the enactment of the Revised Act, the United States District Court for the District of Utah held that the alter ego doctrine could be applied to a Utah LLC.  Ditty v. CheckRite, Ltd., Inc., 973 F.Supp 1320, 1336–37 (D. Utah 1997).  Defendants argue that the authors of the Revised Act specifically intended to reverse that decision.  However, in at least one case decided after the adoption of the Act, a Utah court applied the alter ego doctrine to an LLC.  D'Elia, 147 P.3d at 521, n.5.  Without addressing the Revised Act, the Utah court applied the two prong alter ego test and upheld the trial court's decision not to pierce based on its finding that the defendants "appropriately followed certain internal corporate formalities."  D'Elia, 147 P.3d at 523.  Additionally, in an unpublished decision, a bankruptcy court applied the two prong alter ego test to a Utah LLC and its member.  In re George Love Farming, LLC, 2008 WL 623381 (Bkrtcy. D. Utah 2008) (unpublished).  In that case, the bankruptcy court ordered the substantive consolidation of several bankrupt estates, effectively piercing several corporate veils.  Id. at *5.  The court also held in the alternative that there was sufficient evidence to affirmatively apply the alter ego doctrine to the individual debtor and his consolidated LLCs.  Id. (applying D'Elia, 147 P.3d at 522).  The bankruptcy court did not address the Revised Act.  Defendants argue that in light of the Revised Act, we should consider these applications erroneous.

To the contrary, we interpret the Utah courts' failure to address the Revised Act's

---

[3] We note that the propriety of LLC veil piercing is the subject of some scholarly debate.  See, e.g., Geoffrey Christopher Rapp, Preserving LLC Piercing, 31 J. Corp. L. 1063 (2006).

provision on LLC formalities as evidence that the law does not prohibit LLC veil piercing. We construe the Utah statute according to its plain meaning. See Garrard v. Gateway Fin. Servs., 207 P.3d 1227, 1230 (Utah 2009). The statute clearly prohibits piercing the veil of an LLC solely on the basis of a failure to observe technical formalities. But it does not follow that because formalities cannot be the lone basis for piercing, no LLC member can be held personally liable for an LLC's debts.

In further interpreting the Utah code, it is useful to compare it to similar provisions in other states' LLC statutes. Utah is not alone in expressly providing that the failure of an LLC to observe formalities is not grounds for imposing personal liability. See, e.g., Mont. Code Ann. § 35-8-304 (2009). Further, the Utah language sharply contrasts with other states' statutes that explicitly subject LLCs to the common law veil piercing standards for corporations. See Minn. Stat. § 322B.303 (2010); N.D. Cent. Code § 10-32-29 (2009); Wis. Stat. Ann. 183.0304 (West 2009). However, the Utah statute does not provide that a member of an LLC may never be held personally liable for any reason. The Illinois LLC statute is a useful comparison. It provides that "[a] member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 Ill. Comp. Stat. Ann. 180/10-10 (2010). That provision replaced an earlier version which allowed for an LLC member to be held personally liable to the same extent as a corporate shareholder or director. The much narrower language of the Utah provision is more similar to other states' statutes which preserve corporate veil piercing law, but stipulate that an LLC's failure to observe formalities alone cannot be the basis for imposing personal liability. See Colo. Rev. Stat. § 7-80-107(2) (2010); Ga. Code Ann., § 14-11-314 (2010). The statute recognizes that LLCs are more informal and flexible institutions than corporations, and that the failure to meet rigid requirements should not defeat an LLC's status. However, the statute does not sanction the use of the LLC as an impenetrable wall, behind which members can hide from all creditors. We decline defendants' efforts to transform "limited liability" companies into "zero liability" entities.

We therefore interpret the Utah LLC law as preempting veil piercing based on

formalities alone, but allowing plaintiffs to satisfy the "formalities" prong of the alter ego test by showing that members of an LLC did not just neglect the technical requirements of the statute (e.g. the proper filing of an annual report, adoption of an operating agreement or allocation of a distribution), but instead ignored the status of the LLC as a separate legal entity.

Here, plaintiffs have made such a showing. Melvin McQuarrie paid many of MCM's bills from his personal funds, including litigation expenses, taxes, and loan payments. Additionally, MCM entered into transactions with several other LLCs owned in part or in whole by Melvin McQuarrie. Melvin McQuarrie wrote checks from MCM's bank account to himself and to his other LLCs. MCM did not file its own taxes, and Melvin McQuarrie included its income on his tax return. We therefore conclude that apart from any negligence in complying with the technical requirements imposed by the Revised Act, Melvin McQuarrie ignored MCM's entity status, and treated the company as an extension of his personal resources.

**B**

We next address the fairness prong of the veil piercing test. See <u>D'Elia</u>, 147 P.3d at 523. Its satisfaction is generally left "to the conscience of the court." <u>Id.</u> Melvin McQuarrie sold MCM's only significant asset just days before a binding arbitration which he must have known could lead to a significant judgment against the LLC. Even accepting as true Melvin McQuarrie's suspect claim that he did not believe MCM would lose in the arbitration, he knew a negative result was at least possible, and purposefully positioned the LLC to be unable to pay any award against it. Allowing Melvin McQuarrie to dodge such a foreseeable judgment promotes injustice and an inequity against TFH. <u>See</u> <u>Olson</u>, 226 P.3d at 754. We thus cannot uphold MCM's entity status.

Plaintiffs have satisfied both the formalities and fairness prongs of the alter ego test as to Melvin McQuarrie. Accordingly, we grant plaintiffs' motion for summary judgment on their alter ego claim against Melvin McQuarrie. Because plaintiffs have introduced no evidence suggesting that Janette McQuarrie was the alter ego of MCM, we deny summary

judgment on their alter ego claim against her.

**IV**

Therefore, **IT IS ORDERED GRANTING** defendant Janette McQuarrie's motion to join defendants MCM and Melvin McQuarrie's response (doc. 50). **IT IS FURTHER ORDERED GRANTING** plaintiffs' motion for summary judgment against Melvin McQuarrie on their constructive fraud claim and alter ego claim (doc. 44). **IT IS ALSO ORDERED ENJOINING** Melvin McQuarrie and MCM from further disposition of the property. **IT IS FURTHER ORDERED DENYING** plaintiffs' motion for summary judgment against Janette McQuarrie (doc. 44).

All that remains is: (1) plaintiffs claim for actual fraud against Melvin McQuarrie; and (2) all claims against Janette McQuarrie.

DATED this 8th day of July, 2010.

_Frederick J. Martone_

Frederick J. Martone
United States District Judge